UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IRONWOOD CAPITAL LTD, <br><br> Plaintiff, <br> v. <br><br> IRONWOOD CAPITAL MGMT, ET AL, <br><br> Defendants. | 3:07-cv-1624 (CSH) <br><br> **ORDER DENYING** <br> **MOTION FOR SANCTIONS** |

HAIGHT, Senior District Judge:

Plaintiff Ironwood Capital Ltd. ("Ironwood Capital") moves pursuant to Federal Rule of Civil Procedure 37 for sanctions [Doc. 90] against Defendants Ironwood Capital Management ("ICM"), Ironwood Capital Partners L.P., Ironwood Institutional Partners L.P., CMS/Ironwood Multi-Strategy Fund LLC, and Ironwood Capital Management Corp. (collectively, "Defendants"). This is Plaintiff's second motion for sanctions; the first was based on different allegations and was denied without prejudice by Magistrate Judge Thomas P. Smith on February 12, 2009 on the basis that "the present record does not appear to justify . . . the drastic sanctions plaintiff seeks." [Doc. 89] Plaintiff now asserts that Defendants should be sanctioned "for conducting improper *ex parte* discovery of Ironwood Capital's retained expert firm Consor Intellectual Asset Management ("Consor")." [Doc. 119-3 at 2] Specifically, Plaintiff contends that "Attorney Michael Friedman (Defendants' primary expert witness) orally examined Consor during a conference call on March 20, 2009 with Consor despite knowing that Consor had been retained as Ironwood Capital's expert firm." Id. Therefore, Plaintiff seeks an order of the Court that 1) Defendants have waived their right to depose Ironwood Capital's expert David Drews and 2) Defendants have waived their right to rely at trial on Defendants' expert reports and testimony.

[Doc. 90 at 1]  For the reasons stated herein, Plaintiff's motion for sanctions [Doc. 90] is **DENIED**.

## I.     LOCAL RULE 37(a)

As a threshold matter, Plaintiff has failed to comply with Local Rule of Civil Procedure 37(a), which requires that before filing any motion pursuant to Federal Rule of Civil Procedure 37, the party making the motion must have "conferred with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy." D. Conn. L. Civ. R. 37(a).  It is undisputed that Plaintiff failed to consult with Defendants about the allegations made in the instant motion for sanctions.  Plaintiff argues that the rule requiring conferral does not apply in these circumstances, but the Court finds no support for that position.  Plaintiff's motion for sanctions is properly denied on this basis alone.

## II.    FACTUAL ALLEGATIONS

Nonetheless, the Court will briefly address the allegations and arguments raised by the parties with respect to the motion.  The relevant facts are as follows [See generally Doc. 114 at 2]:  On February 23, 2009, Plaintiff served its expert report by David Drews, a Director at Consor, on Defendants.  In March, 2009, Defendants retained Ocean Tomo Intellectual Capital Equity ("Ocean Tomo") as their expert firm in this litigation, with Michael Friedman of Ocean Tomo to serve as Defendants' primary expert witness.  Also during March, Ocean Tomo and Consor were corresponding regarding a possible business venture between the two companies, specifically the possibility of Ocean Tomo acquiring Consor.  On March 17, 2009, Friedman forwarded a draft of his expert report to Richard O'Brien, Defendants' lead counsel.  On March 20, 2009 at 1 PM, various Ocean Tomo members, including Friedman, participated in a

conference call with various Consor members regarding the potential acquisition. Plaintiff's expert witness David Drews was not on that call. Also on March 20, 2009, Friedman forwarded his finalized expert report to O'Brien, which was received in his firm's mailroom at 2:59 PM that day. On March 23, 2009, Defendants served their expert reports, including Friedman's report, on Plaintiff.

Plaintiff maintains that, through the call described above, Friedman and Ocean Tomo "knowingly engaged in deliberate, deceptive and improper *ex parte* discussions with [Plaintiff's] retained expert consulting group Consor" [Doc. 91 at 1], and thereby "gained insight into Consor's IP litigation support practices under the guise of a proposed business merger between Ocean Tomo and Consor." Id. at 1-2. Plaintiff further alleges that Ocean Tomo sought to "foster[] . . . a false sense of security" by signing with Consor a Mutual Nondisclosure Agreement with respect to their discussion about the possibility of Ocean Tomo's acquiring Consor, Id. at 2, while Ocean Tomo maintains that such agreements are standard for discussions of this nature. [Doc 106-4 at ¶ 3] Plaintiff contends that numerous topics relevant to this litigation were discussed during the call, including "all aspects of [Consor's] business services, including [Intellectual Property ("IP")] Evaluation, IP Leveraging and Licensing, and most significantly, IP Litigation support." [Doc. 93 at ¶ 10]

Friedman responds that he "held a leadership role at Ocean Tomo in exploring various acquisition strategies" [Doc. 106-3 at ¶ 7] and that his colleague Dean Becker, Vice Chairman of Ocean Tomo, asked him to participate in a call with a potential acquisition candidate. Id. at ¶ 8. Friedman states:

Not until I was in the midst of the March 20 call with Consor representatives did I make

>the connection that Consor was the same firm that employed Mr. Drews. During the call, I made no attempt to discover anything pertinent to my work as an expert on this case. And I did not learn anything during the call pertinent to my expert opinions. There was no mention of either plaintiff or defendants during the call. There was no mention of Mr. Drews during the call. There was no mention of this litigation during the call.

Id. at ¶ 10. Becker likewise declares that the March 20, 2009 call was "about the possibility of Ocean Tomo acquiring Consor" [Doc. 106-4 at ¶ 3] and that there was no mention of the litigation during the call. Id. at ¶ 4. Becker further states that he was unaware of this litigation, or the roles of Friedman and Drews as expert witnesses in it, until the instant motion for sanctions was filed. Id. at ¶ 5.

### III.  MOTION TO STRIKE

Plaintiff has also filed a motion to strike [Doc. 119] portions of the declarations of Defendants' lead counsel Richard O'Brien, which he filed in opposition to the pending motion for sanctions. Plaintiff asks the Court to strike paragraph eight of Richard O'Brien's Declaration [Doc. 106-2], as well as the entire Supplemental Declaration of Richard O'Brien. [Doc. 116]

In paragraph eight of his declaration, O'Brien states that Friedman did not solicit or use information from the March 20 conference call in forming his expert opinions or in drafting his expert report. O'Brien also states that "Friedman's report was essentially finished by March 17, 2009 when he furnished me with a draft" and that the March 20, 2009 final version of the report "is in no meaningful or substantive way any different from the March 17, 2009 draft." [Doc. 106-2 at ¶ 8] O'Brien's supplemental declaration, which Plaintiff characterizes as an improper sur-reply, is instead a correction of O'Brien's earlier statement that Friedman furnished the final report to him on the morning of March 20, 2009. In the supplemental declaration, O'Brien states that he has located "a copy of a messenger receipt document generated by my firm's mailroom

showing receipt by my firm of what I believe to be the March 20 version of the report at 2:59 p.m." [Doc. 116]

Plaintiff argues that the specified portions of O'Brien's declarations must be stricken because they contain "improper attorney argument, testimony not subject to cross examination, testimony that is not based on first-hand knowledge of the facts, asserted hearsay not falling within an exception, and incomplete and inaccurate statements." [Doc. 119-3 at 1]  The Court agrees that Friedman is in a better position than O'Brien to explain what was discussed on the call and what use, if any, he made of it, and the Court will rely on Friedman's declaration with respect to those issues [See Friedman's Declaration, Doc. 106-3 at ¶¶ 7-10], and will disregard the statements of O'Brien, as he did not participate in the call.  However, O'Brien does have knowledge of and can speak to when he received versions of the expert report from Friedman and what he observed the content of those reports to be.  Accordingly, Plaintiff's Motion to Strike [Doc. 119] is **DENIED.**  The Court will consider O'Brien's Declarations only to extent set forth above.

### IV.    COMPARISON OF THE REPORTS

Plaintiff states that "it takes little more than a cursory comparison of the two versions of Mr. Friedman's report" to see that the report was materially altered between the two drafts in order to incorporate information learned during the call. [Doc. 114 at 6]  However, Plaintiff does not identify any specific alterations that reflect information allegedly obtained during the call.  Both the March 17, 2009 [Doc. 114-3, Ex. E] and March 20, 2009 [Doc. 92, Ex. B] versions of Friedman's expert report have been provided to the Court, which has made its own review and determination as to their relative contents.  Having conducted a more than cursory review of the

two versions of Friedman's expert report, it is clear that most of the changes merely represent editing for style and clarity. The only two sections with changes that are arguably substantive are titled "Mr. Drews' Use of the Polaroid Factors Contradicts His Argument" and "Ironwood Capital's Viatical Settlement Securitization Is Irrelevant to ICM's Choice of Name." Rather than introducing new facts potentially learned during the call, the changes simply expand upon Friedman's previous arguments. The thrust of Friedman's expert report is to attempt to discredit Drews' professional credentials as a expert. As previously noted, Drews did not participate in the call, nor was he discussed during the call, so it does not appear that the topic of the call, specifically a potential acquisition of Consor by Ocean Tomo, was particularly relevant to the expert report. The Court finds no evidence that the report was edited to reflect information learned during the call.

## V.     LEGAL OR EQUITABLE BASIS FOR SANCTIONS

Plaintiff maintains that "Defendants' nefarious actions violate, *inter alia*, Rule 26(b)(4)(A) of the Fed. R. Civ. P.[1], which provides testifying experts with the right to have counsel defend them during oral examination." [Doc. 91 at 1] However, Plaintiff's expert David Drews did not participate in the March 20 call, so the call did not constitute an oral examination of an expert witness without his counsel present. Therefore, permitting Defendants to depose Drews would not, as Defendants argue, "be giving [Defendants] a second bite out of the apple." [Doc. 114 at 6]

Plaintiff cites a number of cases that it claims demonstrate the egregious impropriety of

---

[1] Fed. R. Civ. P. 26(b)(4)(A) states, "A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided."

Friedman's conduct in participating in the call, but those cases are not directly on point, as they relate to *ex parte* communications by an attorney for one party with the other side's expert witness. Erickson v. Newmar Corp., 87 F.3d 298, 301-02 (9th Cir. 1996) (attorney for one party offered "monetary inducement" to opposing party's expert witness prior to testimony); Campbell Industries v. M/V Gemini, 619 F.2d 24, 26-27 (9th Cir. 1980) (attorney for one party contacted opposing party's expert to induce him to switch sides); Sewell v. Md. Dept. of Transp., 206 F.R.D. 545, 546-47 (D. Md. 2002) (attorney for one party threatened opposing party's expert with defamation suit). These cases establish that "an attorney violates an ethical duty when the attorney has *ex parte* contact with the opposing party's expert witness." Erickson, 87 F.3d at 302. The cited cases do not address the situation at bar, where an expert witness has an unpremeditated *ex parte* communication with the company for which the opposing expert witness works.

Plaintiff also argues that, because Friedman is an attorney, he should have adhered to the prohibition on one party's attorney having *ex parte* communications with the opposing party's expert witness. It bears repeating that Friedman had no contact with opposing expert witness Drews. While it is certainly true that an attorney cannot act in a manner that contravenes his professional responsibility, Friedman's role in this case is as an expert witness for Defendants, not as Defendants' counsel. Furthermore, Friedman maintains that he did not realize prior to the call that it was with the company that employs the opposing expert witness.

Plaintiff has failed to demonstrate that Friedman's participation in the March 20 call with Consor was an improper attempt to glean information for use in his role as an expert witness in this litigation. Plaintiff does not allege or offer any evidence that Friedman was acting at the

-7-

direction of Defendants or Defendants' counsel in participating in the call. Nor does Plaintiff offer any explanation of what incentive Friedman, as an expert witness in the case, would have to devise the alleged plot to have Ocean Tomo feign interest in acquiring Consor in order to conduct early, improper discovery regarding the company for which Plaintiff's expert witness works. It seems rather improbable that Friedman would have that degree of personal investment in this litigation, given the nature of his involvement in it as an expert witness, rather than as counsel or a party.

Nor is there evidence that Friedman discovered information relevant to this litigation as a result of the call. Certainly, none is reflected in his expert report. Plaintiff can only argue that "we will never know the extent to which Defendants benefitted or the level of information they gained." [Doc. 114 at 4] Assuming *arguendo* that Friedman does, as a result of his participation in the call, have marginally more information about Consor than he would otherwise have at this stage of the litigation, that knowledge and the apparently inadvertent nature of its acquisition does not justify imposing the sweeping sanctions which Plaintiff seeks. Depriving Defendants of the right to depose Plaintiff's expert David Drews and to rely at trial on Defendants' expert reports and testimony would severely impair Defendants' ability to defend themselves in this suit and could inappropriately preclude a fair disposition of the case on its merits.

## VI.    CONCLUSION

For the reasons stated herein, Plaintiff's motion for sanctions [Doc. 90] is **DENIED**. Plaintiff's Motion to Strike [Doc. 119] is **DENIED**. Defendants' cross motion for sanctions [Doc. 106 at 10-14], in which Defendants seek, in light of Plaintiff's failure to comply with the conferral requirement of Local Rule 37(a), to be reimbursed for their legal expenses in

responding to what they characterize as Plaintiff's frivolous motion for sanctions, is also **DENIED**.

It is SO ORDERED.

Dated: New Haven, Connecticut

November 30, 2009

                                                /s/   *Charles S. Haight, Jr.*
                                                Charles S. Haight, Jr.
                                                Senior United States District Judge